**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

KIM ALLEN MARTIN,

                Plaintiff,

vs.                                                       Case No. 8:13-cv-384-T-JRK

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.
_____/

**OPINION AND ORDER**[1]

**I. Status**

Kim Allen Martin ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claim for disability insurance benefits ("DIB"). His alleged inability to work is due to mental illness and back problems. Transcript of Administrative Proceedings (Doc. No. 9; "Tr."), filed April 30, 2013, at 49, 58, 135. On March 23, 2010, Plaintiff filed an application for DIB, alleging an onset disability date of June 2, 2000. Tr. at 96-97. Plaintiff's claim was denied initially, Tr. at 50-51, and was denied upon reconsideration, Tr. at 59-60. On September 28, 2011, a hearing was held before an Administrative Law Judge ("ALJ"), during which Plaintiff and a vocational expert ("VE") testified. Tr. at 33-48. Plaintiff was represented by an attorney at his hearing. Tr. at 35. At the time of the hearing, Plaintiff was fifty-four (54) years old. Tr. at 37.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 10), filed May 2, 2013; Reference Order (Doc. No. 12), entered May 3, 2013.

The ALJ issued an unfavorable Decision on October 28, 2011, finding Plaintiff not disabled through Plaintiff's date last insured (March 31, 2006). Tr. at 21-28. On January 8, 2013, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. Plaintiff then commenced this action on February 11, 2013 under 42 U.S.C. § 405(g) by filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff raises two issues on appeal. The first issue is "[w]hether the Commissioner's finding that [Plaintiff] has the residual functional capacity [("RFC")] to return to his past relevant work [("PRW")] as a 'warehouse worker' is based on substantial evidence." Plaintiff's Memorandum of Law in Support of Complaint (Doc. No. 13; "Pl.'s Mem."), filed July 2, 2013, at 1. The second issue is "[w]hether the Commissioner's credibility determination is supported by substantial evidence." Id. On August 23, 2013, Defendant filed a memorandum addressing the issues raised by Plaintiff. See Memorandum in Support of the Commissioner's Decision (Doc. No. 14; "Def.'s Mem."). After a thorough review of the entire record and consideration of the parties' respective memoranda, the Commissioner's final decision is due to be reversed and remanded for the reasons explained herein.

## II. The ALJ's Decision

When determining whether an individual is disabled,[2] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining

---

[2] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform PRW; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry through step four, where his inquiry ceased based on his finding. See Tr. at 23-27. At step one, the ALJ observed that Plaintiff "did not engage in substantial gainful activity during the period from his alleged onset date of June 2, 2000 through his date last insured of March 31, 2006." Tr. at 23 (emphasis and citation omitted). At step two, the ALJ found that "[t]hrough the date last insured, [Plaintiff] had the following severe impairment: bipolar." Tr. at 23 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff, "[t]hrough the date last insured, . . . did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 23 (emphasis and citation omitted). The ALJ determined that "through the date last insured, [Plaintiff] had the [RFC] to perform medium work . . . with the following limitations: no public contact; occasional contact with coworkers; no exposure to hazardous machinery; no driving; and, limited to simple, one to two step instructions that are low stress." Tr. at 25 (emphasis omitted). At step four, the ALJ found "[t]hrough the date last insured, [Plaintiff] was capable of performing [PRW] as a warehouse worker." Tr. at 27 (emphasis and citation

omitted). The ALJ concluded Plaintiff "was not under a disability . . . at any time from June 2, 2000, the alleged onset date, through March 31, 2006, the date last insured." Tr. at 27 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

### IV.  Discussion

As noted above, Plaintiff raises two issues on appeal.  Each is discussed in turn.

### A. PRW Finding

Plaintiff first challenges the ALJ's determination that Plaintiff could return to his PRW as a warehouse worker.  See Pl.'s Mem. at 1, 11-16.  In doing so, Plaintiff argues that the ALJ failed to develop a full and fair record and that it was improper for the ALJ to rely on the VE's testimony, because "[t]he record contains no description, detailed or otherwise, of [Plaintiff's] duties as a 'warehouse worker,' nor does it contain a description of the physical and/or mental demands thereof." Id. at 14.

At step four of the sequential inquiry, an ALJ must assess a claimant's RFC and determine whether the claimant can perform his or her PRW.  See 20 C.F.R. § 404.1520(a)(4)(iv).  "[T]o constitute [PRW], the position in question must have been done within a fifteen year period, lasted long enough for the claimant to learn to do it, and be performed at a substantial gainful activity level." Brown v. Barnhart, 410 F. Supp. 2d 1287, 1297 (S.D. Fla. 2006) (citing 20 C.F.R. § 404.1565(a)).

Generally, a claimant will be found "not disabled" if the claimant has the RFC "to meet the physical and mental demands of jobs a claimant has performed in the past (either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy)[.]" Social Security Ruling ("SSR") 82-62, 1982 WL 31386, at *3 (S.S.A. 1982).  In making this determination, three possible tests may be used.  See SSR 82-61, 1982 WL 31387, at *1 (S.S.A. 1982).  The first test is whether the claimant retains the ability to perform a past relevant job based on a broad occupational classification of that job;

e.g., a "packaging job."[3] Id.  The second test looks to whether the claimant retains the capacity to perform the <u>particular</u> functional demands and job duties of a past job <u>as he or she actually performed it.</u>  Id. at *1-2.  For the third test, the ALJ may consider whether the claimant retains the capacity to perform the functional demands and job duties of the job as <u>ordinarily required</u> by employers throughout the national economy.  Id. at *2.  As to the third test, SSR 82-61 notes that "[t]he *Dictionary of Occupational Titles* (DOT) descriptions can be relied upon – for jobs that are listed in the DOT – to define the job as it is *usually* performed in the national economy."  Id.  If the claimant is found to have the capacity to perform a past job under any of these tests, he or she will be found not disabled.  Id.

Section 404.1520(e) of the Code of Federal Regulations "'requires careful consideration of the interaction of the limiting effects of the person's impairment(s) and the physical and mental demands of . . . [his or] her PRW to determine whether the individual can still do that work.'"  <u>Hawthorne v. Astrue</u>, No. CA 07-0780-C, 2008 WL 2157141, at *3 (S.D. Ala. May 21, 2008) (unpublished) (quoting SSR 82-62, 1982 WL 31386, at *2).  When determining whether a claimant has the ability to perform his or her PRW pursuant to one of the tests described above, an ALJ must make the following specific findings:

> 1.  A finding of fact as to the individual's RFC.
> 2.  A finding of fact as to the physical and mental demands of the past job/occupation.
> 3.  A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

---

[3]  This test is not favored due to the vastly different functional demands that may exist in different jobs even though they may be placed in the same generic category.  SSR 82-61, 1982 WL 31387, at *1.

SSR 82-62, 1982 WL 31386, at *4; see also Levie v. Comm'r of Soc. Sec., 514 F. App'x 829, 831 (11th Cir. 2013) (citing Lucas v. Sullivan, 918 F.2d 1567, 1574 n.3 (11th Cir. 1990) (noting that "[t]o support a finding that the claimant is able to return to his [PRW], the ALJ must consider all of the duties of that work and evaluate the claimant's ability to perform them in spite of his impairments"). The ALJ's finding that a claimant can perform PRW "must be supported by substantial evidence, not mere intuition or conjecture." Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002). Moreover, the decision as to whether the claimant retains the capacity to perform his or her PRW "must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit." SSR 82-62, 1982 WL 31386, at *3; see Barrio v. Comm'r of Soc. Sec. Admin., 394 F. App'x 635, 637 (11th Cir. 2010) (recognizing that the ALJ has a duty to develop a full and fair record, and reversing in part because the ALJ "failed to discuss the specific duties of [the claimant's] former job . . . and how or whether the RFC determination allowed [the claimant] to do th[e] tasks [of the job]").

At the hearing, the ALJ did not elicit any testimony from Plaintiff regarding the way he performed his PRW before the ALJ asked the VE to describe Plaintiff's PRW. Tr. at 43. The VE's response was apparently based on his review of the administrative transcript, because there was no description given by Plaintiff at the hearing. See Tr. at 37-42, 44-48. The VE testified that Plaintiff's PRW consisted of a "foreman at a newspaper"; a "filter strainer job" or "screen printer"; "some temporary work in a warehouse"; and a "bindery worker" at a newspaper. Tr. at 43. The ALJ then posed one hypothetical to the VE and asked the VE if

there would be employment "locally in Ashland for that kind of individual?"  Tr. at 43.  The VE responded, "There would be employment, Your Honor.  The medium exertional we've established . . . there would be a wide range of exertional level work activities."  Tr. at 44.  The ALJ then asked if Plaintiff would be able to return to his PRW, to which the VE responded that all "[PRW] would be ruled out, except for the warehouse work labor."  Tr. at 44.

In his Decision, the ALJ adopted the hypothetical posed to the VE as Plaintiff's RFC.  <u>See</u> Tr. at 25.  Then, relying on the VE's testimony, the ALJ found Plaintiff could perform his PRW "as a warehouse worker."  Tr. at 27.  Specifically, the ALJ stated as follows:

> [Plaintiff] reported that he worked as a warehouse worker.  The [VE] testified that this job, as he described it, and as that job is described in the Dictionary of Occupational Titles [("DOT")], is a medium unskilled job.  Assuming [Plaintiff's RFC] as assessed by the undersigned here, the [VE] testified that [Plaintiff] would be able to perform the requirements of this job, based on either description.
>
> Therefore, in comparing [Plaintiff's RFC] with the physical and mental demands of the work as a warehouse worker, the undersigned finds that [Plaintiff] is able to perform this work as actually and generally performed, per the [VE's] testimony.

Tr. at 27.

The first problem with the ALJ's finding is that it is not even clear from the administrative transcript that Plaintiff ever was a "warehouse worker."  The only mention of Plaintiff working in a warehouse is in a Disability Report form completed by Plaintiff, in which he noted that between November 1999 and sometime in 2000, Plaintiff worked as a "temp worker" and the type of business was "warehouse, temp agency."  Tr. at 119 (capitalization omitted).  The only description of this work by Plaintiff is found in a Work History Report

dated April 14, 2010: Plaintiff indicated he worked for "various temp agenc[ie]s, but "none panned out [because he] started to become worse holding on [and] doing things to keep [his] reputation or job." Tr. at 138 (capitalization omitted); see Tr. at 145 (Plaintiff describing his work history around the year 2000 as "sketchy" because he "had mostly temp jobs through temp employment"). As noted above, the ALJ did not elicit any testimony from Plaintiff at the hearing regarding the warehouse position. See Tr. at 37-42, 44-48. Additionally, the VE did not explain what evidence in the record he was relying on to determine that Plaintiff had PRW as a "warehouse worker." See Tr. at 43. As it stands, the ALJ erred in this regard, and more information is needed to definitively determine that Plaintiff at some point was a "warehouse worker." See generally King v. Astrue, No. 3:11-cv-142-J-TEM, 2012 WL 868874, at *5 (M.D. Fla. Mar. 14, 2012) (unpublished) (finding the ALJ erred at step four "[b]y finding [the claimant] could return to work [the claimant] had never performed").

Even assuming Plaintiff was employed as a "warehouse worker," the second problem with the ALJ's finding is that it is unclear whether this work was performed at the substantial gainful activity level. Plaintiff's earnings records appear to reflect that he had four jobs in 1999 and three jobs in 2000. Tr. at 109-10. Whether the VE and the ALJ considered all those jobs to be performed by Plaintiff as a "warehouse worker" and whether Plaintiff earned enough and worked long enough at those jobs to learn how to do them, i.e., whether Plaintiff engaged in substantial gainful activity, are left unanswered. See Brown, 410 F. Supp. 2d at 1297 (citation omitted) (defining substantial gainful activity). Simply put, the undersigned cannot determine how the VE and the ALJ arrived at their conclusions with respect to Plaintiff's PRW as a "warehouse worker." The lack of explanation frustrates judicial review.

Accordingly, the undersigned cannot find that the ALJ's Decision is supported by substantial evidence.

### B. Plaintiff's Credibility

Plaintiff's second issue on appeal is a challenge to the ALJ's credibility finding. See Pl.'s Mem. at 1, 17-22. Specifically, Plaintiff argues that "the ALJ[] did not adequately evaluate [Plaintiff's] subjective complaints or the medical evidence." Id. at 17.

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.3d at 1223. Although "credibility determinations are the province of the ALJ," Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005), "explicit and adequate reasons" must be articulated if the ALJ discredits the claimant's testimony, Wilson, 284 F.3d at 1225; see also Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (stating that "after considering a claimant's complaints of pain [or other subjective symptoms], the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence").

"[C]redibility determinations are the province of the ALJ." Moore, 405 F.3d at 1212. The ALJ "must articulate explicit and adequate reasons" for finding a claimant "not credible."

Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002).  "When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).  After considering the claimant's subjective complaints, "the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence."  Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (citing Wilson v. Heckler, 734 F.2d 513, 517 (11th Cir. 1984)).

In his Decision, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC] assessment." Tr. at 26. In support, the ALJ listed two reasons: 1) Plaintiff "described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations, which weakens the credibility of his allegations"; and 2) "the objective findings in this case fail to provide strong support for [Plaintiff's] allegations of disabling symptoms and limitations."  Tr. at 26.

As to his first reason, the ALJ summarized a Function Report completed by Plaintiff, in which Plaintiff indicated that "he cares for a child, cares for a pet, attends to his personal care needs, prepares simple meals, cleans, does laundry, mows the yard, performs car

-11-

repairs, was[hes] dishes, paints, performs household repairs, drives, shops, pays bills, counts change, handles a savings account, and uses a checkbook." Tr. at 26 (citing Tr. at 129-33). The ALJ also noted that Plaintiff "claimed he has difficulty completing tasks, concentrating, and getting along with others." Tr. at 26. While most of these statements made by the ALJ are accurate,[4] given the undersigned's finding below with respect to the ALJ's second reason, whether the ALJ was correct on the first reason becomes a nullity.

Regarding the objective medical evidence (the ALJ's second reason), the ALJ initially recognized that "there is very little medical evidence prior to [Plaintiff's] date last insured." Tr. at 26. The ALJ proceeded to summarize the available medical evidence, including some of the treatment notes from Irene A. Nickolakis, M.D., P.A., a psychiatrist, Tr. at 26 (referring to Tr. at 313-27).[5] The ALJ also summarized a form completed by Plaintiff's wife. Tr. at 27 (referring to Tr. at 149-56).

The ALJ observed that according to Dr. Nickolakis's notes, Plaintiff had "a history of panic attacks and paranoia" in September 2003, but "th[o]se symptoms had decreased over time." Tr. at 26. Generally speaking, the ALJ only referred to those portions of Dr. Nickolakis's notes that show Plaintiff was doing well. See Tr. at 26. A complete review of Dr. Nickolakis's notes paints a somewhat different picture. For example, Plaintiff reported multiple times that his obsessive compulsive disorder ("OCD") was not under control and

---

[4] Plaintiff actually indicated on the form that he does not use a checkbook. Tr. at 131.

[5] The ALJ did not discuss the psychological consultation Plaintiff underwent while hospitalized on November 22, 2005. See Tr. at 254-55. In fact, the ALJ found that "[a]s for opinion evidence, the undersigned notes that there are no treating or examining source statements exhibited in the record referring to the period prior to his date last insured." Tr. at 27. The ALJ apparently overlooked this psychological consultation.

affected various activities, including "signing his name to his children's class work." Tr. at 315 (additionally reporting that on January 15, 2004, Plaintiff had not seen a "real decrease in his doubting and checking behavior"), 316 (indicating that on March 11, 2004, Plaintiff felt as though the medication was no helping his OCD). As another example, Plaintiff reported fairly consistently that he had panic attacks and that his anxiety was worse in the mornings. Tr. at 317-19. In light of these treatment notes that the ALJ did not summarize, it appears his finding that Plaintiff's symptoms decreased over time is not entirely accurate. The Court recognizes that an ALJ is not required to discuss every piece of medical evidence. But, an ALJ also cannot focus on evidence supporting his or her decision to the exclusion of contrary evidence. See McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986). In sum, the ALJ's credibility finding is flawed, and it should be reassessed on remand.

## V. Conclusion

After a thorough review of the entire record, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

    (A) Develop the record with respect to Plaintiff's past relevant work;

    (B) Reassess Plaintiff's credibility and if Plaintiff is found to be incredible, provide explicit and adequate reasons for the finding; and

    (C) Take such other action as may be necessary to resolve this claim properly.

2. The Clerk is further directed to close the file.

3. In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) or § 1383(d)(2) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** at Jacksonville, Florida on March 13, 2014.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

jlk
Copies to:
Counsel of Record